IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

YAN SHIFRIN,

    Plaintiff,

vs.

ASSOCIATED BANC CORP, ASSOCIATED
BANK, N.A., ASSOCIATED INVESTMENT
SERVICES, INC., FIRST FINANCIAL
BANK, FSB and UNKNOWN OWNERS,

    Defendants.

Case No. 3:12-cv-00839-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants Associated Banc-Corp, Associated Bank, N.A., Associated Investment Services, Inc., and First Financial Bank, FSB's ("Defendants") motions for summary judgment on Counts I, II, III (Doc. 27) and V (Doc. 30) of plaintiff Yan Shifrin's ("Shifrin") complaint. For the following reasons, the Court denies Defendants' motions for summary judgment.

**I.**      **Facts and Procedural History**

Defendants are the current owners of the real property located at 100 E. Washington Street, Belleville, Illinois 62220 ("the property"). Bric Partnership, LLC ("Bric") leased Suite 220 of the property from Defendants and operated a business office within the suite. Shifrin was employed by Bric during the period of time between approximately March 31, 2009 and January 4, 2011. During his employment with Bric, Shifrin worked within the property on a daily basis. Shifrin alleged that during his employment, mold, fungi, bacteria and other harmful substances were located in and about the property. Specifically, Shifrin stated that he saw these substances within Suite 220 of the property in the following locations: in the duct work above shelves in a

basement storage room where ceiling tiles were broken or missing, on approximately 3 window sills in and about Suite 220, and around the faucet in the men's bathroom on the second floor of Suite 220. (Doc. 28-3, Interrogatory No. 21).

Shifrin alleged that Defendants knew, or if they had exercised reasonable care, should have known, about the harmful substances located within the property. As a result, Shifrin alleged that Defendants were under an obligation to take steps to remove the substances or warn those working within the property of the conditions. The lease agreement between Defendants and Bric ("Bric Lease Agreement") addresses the care and maintenance of the property:

> 10. Care and Maintenance
>
> a) Landlord shall keep the following in good repair: roof, exterior walls, foundation, sewer, **plumbing**, **heating**, wiring, **air conditioning**, plate glass, **windows and window glass**, exterior decorating, including maintenance, repair and replacement of light bulbs, tubes and ballasts **and all common areas** including entrances, hallways, corridors, stairways, elevators, restrooms, parking area, driveways, sidewalks, excepting therefrom any such repair caused by the gross negligence or willful misconduct of Tenant.
>
> b) Tenant shall maintain and repair the Leased Premises in accordance with local ordinances and lawful direction of proper authorities in a reasonable safe, serviceable, clean and presentable condition used by Tenant within the Leased Premises. Tenant shall, at is sole expense, provide and maintain adequate fire extinguishers upon Leased Premises, as required under applicable law.

(Doc. 31-2). The Supervisor of Defendants' maintenance team, Mark Jacobson, acknowledged that "from time to time, employees on the maintenance team or contractors did enter Bric Partnership's premises for building repair and maintenance issues." (Doc. 28-1). The building was inspected monthly for such maintenance and repair issues. (Doc. 28-1). A maintenance person, employed by Defendants, also did routine daily maintenance in addition to periodic repairs every 2-3 weeks within Suite 220. (Doc. 28-3, Interrogatory No. 22).

Despite the frequent inspection and maintenance by Defendants' employees, Defendants did not take steps to remove the substances or warn those working within the property of the

conditions.  Because he had no notice of the harmful conditions, Shifrin assumed he was working within a safe environment and continued to go to work daily within the property. Shifrin alleged that since he continued to work within the property, he was exposed to, ingested and/or inhaled mold, fungi, bacteria and other harmful substances.  Had Shifrin been aware of the harmful conditions, he would have taken steps to protect himself and reported the conditions to the proper authority.  As a result of his exposure, ingestion or inhalation of these harmful substances, Shifrin alleged that he has contracted asthma, pneumonia and other health-related injuries.

On June 11, 2012, Shifrin filed his five-count complaint in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, alleging negligence, negligence under the Premises Liability Act, negligence based on the theory of res ipsa loquitur, fraudulent misrepresentation and negligent misrepresentation against Defendants.  Defendants removed the case to this Court based on diversity.  Thereafter, Defendants' filed a motion to dismiss (Doc. 24) pursuant to Fed. R. Civ. P. 12(b)(6) , which this Court denied.

The Defendants filed the instant motions for summary judgment (Doc. 27 & 30) on Counts I, II, III and V of Shifrin's complaint prior to the denial of their motion to dismiss by the Court.  In their summary judgment motions, Defendants claimed that they did not owe a duty to Shifrin because they lacked control over the portion of the premises where the mold, fungi, bacteria and other harmful substances were allegedly found.  Defendants argued that as Shifrin's claims lacked the essential duty element necessary to proceed, they were entitled to judgment as a matter of law.  Shifrin responded and Defendants replied.

## II. Analysis

To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). When considering a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. A court cannot enter summary judgment for a moving party if the moving party fails to meet its burden of proof, even if the nonmoving party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). However, it is enough for the moving party to point to the absence of evidence to support an essential element of the plaintiff's claim for which the plaintiff carries the burden of proof. *Celotex*, 477 U.S. at 322-23, 325.

When responding to a motion for summary judgment, the nonmoving party may not merely rely upon the allegations presented in the pleadings, but must show specific facts that indicate a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). In this determination, a court cannot properly consider conclusory statements that are not grounded in specific facts. *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004). A genuine issue of material fact exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. If a defendant points to a lack of evidence to support an essential element of a plaintiff's claim and the plaintiff fails to provide sufficient

evidence to support that element, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322-23.

When a federal court retains jurisdiction over a case through diversity citizenship of the parties, it must apply state substantive law. *Malen v. MTD Prods., Inc.*, 628 F. 3d 296, 303 (7th Cir. 2010). Accordingly, the Court will address Defendants claim, under Illinois law, that as a matter of law, they did not owe a duty to Shifrin. However, the Court must first address the evidentiary issues raised.

### A. Whether the Court Can Properly Consider Specific Evidence In Its Duty Analysis

Before analyzing whether one party owes a duty to another, the Court must first determine whether all of the evidence before it can be properly considered in its duty analysis. Specifically, Defendants have raised the following issues: (1) whether the court can consider Shifrin's statements concerning the type of duct work he saw and (2) the proper interpretation of the terms of the Bric Lease Agreement. The Court will consider each issue separately below.

#### 1. Shifrin's Statements Labeling Exposed Duct Work As HVAC Duct Work

Federal Rule of Evidence 602 requires that a witness have personal knowledge of the events to which he testifies. Fed. R. Evid. 602. In addition, Rule 701 of the Federal Rules of Evidence elaborates on Rule 602 and "permits a lay witness to offer an opinion or inference that is rationally based on the witness's perceptions and that is helpful to the development of the evidence at trial." *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990). The combined effect of Rules 602 and 701 recognizes that all knowledge is inferential, but prevents "the piling of inference upon inference to the point where testimony ceases to be reliable." *Id*.

In Shifrin's Answer to Interrogatory 21 (Doc. 28-3) Shifrin stated that he saw mold fungi, bacteria and other harmful substances within Suite 220 of the property in "the duct work above

5

shelves in a basement storage room where ceiling tiles were broken or missing," as well as other locations. Later in his Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 34), Shifrin refers to the same duct work as "heating, air conditioning and ventilation (HVAC) duct work." Defendants argue that Shifrin cannot assert that the duct work on which he saw the harmful substances is HVAC duct work because he has no personal knowledge of that fact. It is true that without an examination of the duct work or even an HVAC expert to confirm that the duct work is in fact for the heating, air conditioning and ventilation, Shifrin could not say with 100% certainty that what he observed was HVAC ductwork. However, personal knowledge under Rule 602 can be "an inference that is rationally based on the witness's perceptions." Here, a rational person who saw duct work running above the ceiling in a building would likely assume that such duct work was for heating, air conditioning and ventilation. This is because in most people's experience, duct work is used to conduct heated or cooled air throughout a building or home. Shifrin's rational inference that the duct work he saw was for the heating, air conditioning and ventilation qualifies as personal knowledge of that fact and meets the requirements of Rule 602. Therefore, the Court can properly consider the duct work as HVAC duct work in its duty analysis.

### 2. Proper Interpretation of Bric Lease Agreement Terms

Contract interpretation can be conducted during the resolution of a motion for summary judgment because the determination of whether a contract is ambiguous is a matter of law. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2005). A lease is a contract between the landlord and tenant and normal principles of contract interpretation apply. *Midland Mgmt. Co. v. Helgason*, 630 N.E.2d 836, 839 (Ill. 1994). "If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the

contract document itself, which should be given its plain and ordinary meaning…" *Richland W. McCarthy Trust Dated Sept. 2, 2004 v. Ill. Cas. Co.*, 946 N.E.2d 895, 903 (Ill. App. Ct. 2011). However, the rule of interpreting contracts to avoid absurd results is applied by courts when it is necessary "to reject one party's strained, literal reading of contract language in favor of the other party's reasonable, commonsense reading." *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 360 (7th Cir. 2009).

The Bric Lease Agreement states in part that, "Landlord shall keep the following in good repair: roof, exterior walls, foundation, sewer, **plumbing**, **heating**, wiring, **air conditioning**, plate glass, [and] **windows and window glass**." (Doc. 31-2). In Shifrin's response to Defendants' motions for summary judgment, he argued that specific contract provisions show that Defendants contracted to maintain the duct work as part of the heating and air conditioning, the faucets in the bathrooms as part of the plumbing and the window sills as part of the windows. The Defendants argued that the "plain meaning" of the terms bolded above did not include the duct work, faucets or window sills.

After consideration of the terms of the Bric Lease Agreement and their common sense meanings, it is clear that duct work is included in the terms "heating" and "air conditioning," that a faucet is included in the term "plumbing" and window sills are included in the term "windows". Without the duct work, there would be no heat or cool air delivery to the building. A heating or cooling unit without duct work would be useless. Therefore, a commonsense reading of the terms "heating" and "air conditioning" mean the heating and cooling systems, not the unit detached from a delivery mechanism. This same commonsense reading also applies to the faucet in the bathroom on the second floor of the Bric premises. A faucet is a plumbing fixture. Without a faucet, there is no access to the interior plumbing, making it useless.

The term "windows" also clearly includes window sills. The Bric Lease Agreement contains the terms "windows" and "window glass." The lease specifically identified window glass, indicating that the term "windows" referred to parts of a window, other than the glass, that make up a complete window unit. These other parts include the frame, of which the sill makes up the bottom most part. As a part of the window frame that supports the window glass, a window sill is included in the term "windows" in the Bric Lease Agreement. Therefore, the Court can properly consider the inclusion of the duct work, faucet and window sills in the commonsense reading of the contract terms: "heating," "air conditioning," "plumbing" and "windows." Now the Court will move to consider whether the Defendants owed a duty of care to Shifrin.

**B. Whether Defendants Owed a Duty of Care to Shifrin**

In Counts I, II, III and V of Shifrin's complaint (Doc. 4), he asserts four different negligence claims against Defendants: (I) common law negligence, (II) negligence under the Premises Liability Act, (III) negligence under the theory of *res ipsa loquitur*, and (V) negligent misrepresentation. Defendants assert that each claim must fail as a matter of law because Shifrin cannot satisfy the duty element essential to all negligence claims.

In an action for negligence under Illinois law, "the plaintiff must set out sufficient facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach." *Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1364 (Ill. 1988). "Whether under the facts of a case there is a relationship between the parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court." *Id*. If the Court cannot infer the existence of a

duty from the facts asserted, "no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of [the] defendant is proper." *Id*.

In Illinois, "'the duty toward a third party arises out of possession and control, and can be attributed only to the persons who have possession and control.'" *Bennett ex rel. Estate of Bennett v. Northlake Assoc.* 442 F. Supp. 2d 569, 570 (N.D. Illinois 2006) (*quoting Conway v. Epstein*, 200 N.E.2d 16 (Ill. App. Ct. 1964)). Therefore, a landlord is not generally liable under a negligence theory for injuries to third parties that occur on a premises leased to a tenant where the premises are under the tenant's control and/or in the tenant's possession. *Woods v. Lawndale Theatre Corp., Inc.*, 24 N.E.2d 193, 195 (Ill. App. Ct. 1939). However, "where the landlord retains control of a portion of the premises leased to the tenant [, the landlord] has a duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition." *Klitzka ex rel. Teutonico v. Hellios*, 810 N.E.2d 252, 256 (2004). This includes all common areas of premises. *Duncan v. United States*, 734 F. Supp. 824, 826 (N.D. Ill. 1990).

Even if a landlord relinquishes control of a property to a tenant, the landlord can still be liable to a third party for injuries sustained on the property if one of the following exceptions applies: (1) there is a latent defect existing at the time of leasing that landlord should know about; (2) landlord fraudulently conceals a dangerous condition; (3) the defect causing harm amounts to a nuisance; (4) landlord makes a promise at time of leasing to repair the condition; (5) landlord violates a statutory requirement of which the tenant is in the class designated to be protected by such a requirement; and (6) landlord voluntarily undertakes to render service. *Klitzka ex rel. Teutonico*, 810 N.E.2d at 256. For example, "'where the landlord contracts to keep the property under the tenant's control in repair, the landlord assumes a duty to maintain the property in a certain condition and common law liability may arise from the negligent

performance of this voluntary undertaking.'"  *Bennett*, 422 F. Supp. 2d at 571. (*quoting Lamkin v. Towner*, 563 N.E.2d 499 (Ill. 1990)).

Viewing all of the evidence in a light most favorable to the nonmoving party, this Court finds that the particular circumstances of the relationship between the parties requires that a legal obligation be imposed upon Defendants for the benefit of Shifrin.  A duty of reasonable care is not imposed on Defendants simply because they are the landlords of the property, but because of the Defendants' control over common areas, control over a portion of the premises leased to Bric and their voluntary contract to perform repairs within Suite 220.

Defendants retained control over common areas of the property.  Defendants only leased Suite 220 of the premises to Bric, not the entire building.  This means that Defendants could not have relinquished control over the entire building to Bric or another lessee, leaving common areas of the building within Defendants control.  Furthermore, the Bric Lease Agreement acknowledges that there are common areas on the property for which Defendants are responsible. (Doc. 31-2, paragraph 10(a)).  The HVAC duct work, in which Shifrin viewed the harmful substances, is most likely not isolated within Suite 220, but is instead common to the entire building.  This argument also applies to the plumbing in the building as it unlikely that each suite had its own separate plumbing.  As a common area shared by the building, the duct work that supplies the heating and air conditioning and the plumbing are under the control of the Defendants.

Even if the ductwork and plumbing in which Shifrin saw the aforementioned harmful substances were isolated to Suite 220, Defendants retained control over them within the Bric premises. Defendants' maintenance team and contractors periodically entered Suite 220 for building repair and maintenance.  (Doc. 31-1).  Specifically, a maintenance person employed by

Defendants performed routine maintenance within the Bric premises on a daily basis and made repairs within the Bric premises every 2-3 weeks on average. (Doc. 31-3). Additionally, the building was inspected monthly to determine whether there was other maintenance or repairs that need to be made. Defendants rely on the statements of their maintenance supervisor, Mark Jacobson, as evidence of their lack of control over the premises. Jacobson states that Defendants "never reserved any right to control any portion of the premises for the common use of the entire building" and "never exercised any control of any portion of Bric Partnership's premises for their own use or for the common use of the entire building." (Doc. 28-1)  However, Jacobson also stated that "employees on the maintenance team or contractors did enter Bric Partnership's premises for building repair and maintenance issues." (Doc. 28-1). The repeated entry onto the Bric premises by Defendants maintenance team and contractors, in order to conduct inspections and repairs, indicates that Defendants did retain control over the relevant portion of the Bric premises.

   Additionally, Defendants voluntarily contracted to keep parts of Suite 220 in good repair. Pursuant to paragraph 10(a) of the Bric Lease Agreement, defendants contracted to keep, among other items, the plumbing, heating, air conditioning, windows and window glass in good repair. (Doc. 31-2, 10(a)). These are the same items on or about which Shifrin saw mold, fungi, bacteria and/or other harmful substances. Specifically, Shifrin viewed these harmful substances in or about the heating, air conditioning and ventilation duct work, the window sills and around the faucet in the second floor bathroom. (Doc. 34). The plain language of the lease and its commonsense reading indicate that the Defendants contracted to keep portions of the Bric premises in repair. Defendants thereby assumed a duty to maintain those portions in a certain condition.

11

Viewing the facts provided in the light most favorable to the nonmoving party, the Court can infer that Defendants owed a duty to Shifrin. Therefore, the Court finds that Shifrin does satisfy the duty element necessary to support Courts I, II, III and V of his complaint. Defendants are not entitled to judgment as a matter of law.

### III.     Conclusion

Accordingly, the Court **DENIES** Defendants' motions for summary judgment (Docs. 27 & 30).

**IT IS SO ORDERED.**

**DATE:** April 30, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
